Next case this morning, this afternoon, Timothy Vander Plaats v. Michael Barthelemy. Good afternoon, Judge. May it please the Court. In the words of the Lafayette Police Department Officer Domkowski, not my own words, my client needed to get the message that he, quote, can't fuck with a cop's family, end quote. Not finished, Officer Domkowski went on to tell LPD Internal Affairs Investigations, which importantly were two lieutenant's ranking officers, you guys might be doing an investigation on me for something more serious than threats on a guy if he kept messing with my family. I mean, we're all like that, end quote. An Internal Affairs Investigation handed solely by LPD officers came after LPD officers Barthelemy, Williams, Domkowski, and others got intoxicated at a BW3s in Lafayette and made calls expounding the graphic threats to my client, Mr. Vander Plaats, including a threat to kill him. According to Officer Barthelemy, the other officers had absolutely no idea who they were calling, they were just sticking up for that officer. Importantly, LPD Internal Affairs said nothing to the officers about their alarming sentiments in the interviews just a few days later. My client was lured into an alley and beaten infertilely by Officer Barthelemy, who admitted that his first thoughts after hearing of the attack, he denied the attack, but in his deposition stated, well, with the timing you know, I was concerned that I might be accused. Officer Barthelemy's actions in attacking Mr. Vander Plaats were related to the performance of his police duties, which, as indicated by officer statements, included the protection of an officer's family and sticking up for one another. How does that connect to his official duties in any way? It connects to the official duties, and you have to look at the totality of the circumstances in terms of what's going on here. And you have interactions from Officer Barthelemy and Mr. Vander Plaats early on with his fiancée, and that's sort of what stemmed from this. You have an incident at BW3s where officers get intoxicated and basically move in to defend the honor of another officer, to stick up for the other officer. The connection, the badge of authority, or his authority, stems from the internal affairs investigation and the idea that there was a code of silence. There was a code both to defend an officer's family and a code of silence to look the other way. In this case, when Mr. Vander Plaats was attacked, he went to the hospital, and at the hospital, Officer Sinks responded to that, to the hospital, and he asked him, is there anybody that you think might do this? And his response was Officer Barthelemy. The second call that Officer Sinks made was to Officer Barthelemy, and he did not indicate or did not perceive him as a suspect, but he was the first person that he mentioned. And so the badge of authority comes from this code of silence. The threats are important in the context of giving the officer the idea that this is okay. First of all, the... So how do we distinguish between private actions of a police officer and actions under color of state law? There are private actions, and there's a case law that was cited that talks about a police chief that had a family dispute and had a physical attack. How do we tell the difference? Because when you have a facilitation of the department, a knowledge by the department, and effectively, as we kind of outlined in our briefing, almost acting as an accomplice, aiding, inducing, or causing, by particularly Officer Domkowski, aiding, hey, you let it get too far. You know, I think that we're all like that. And it's important to note that in the context of the internal affairs investigation, that Officer Domkowski suggested that my client shouldn't have reported this at all. He was doing it just to get them in trouble. And so in that context, you have discussions from Officer Domkowski to Officer Bartholomew before the internal affairs investigation. You have internal affairs statements that were made, and you have... Is there any indication of blessing from superior officers? You have blessings through the absence of knowing that these threats were present in the form of... There were two lieutenants that were giving the internal affairs statements. And you have the clear threats. They're doing the internal affairs investigation? Yes, which they probably shouldn't have been doing in the first place. In this context, in the sense of because of the nature of this investigation, it probably should have been handled by another law enforcement agency. What's an internal affairs division if it's not internally? I mean, every police agency does it, right? Yes, they do. In the context of they did both. And my point, Judge, is that they did both the internal affairs and the criminal investigation. I guess that's my point. Every agency has an internal affairs investigation for the idea of almost as a human resource notion. In this context, they did both. And they did both the criminal investigation as well. And so the authority stems from remaining silent. And this court has stated in previous cases you have this code of silence that should not be endorsed. Well, how is this different than, say, people who work at the same manufacturing plant or people who happen to be all in the National Guard or people that have any sort of affiliation and friendship together would act? I don't see how they would act much differently. Because in his position and his authority as a police officer. Well, I understand they have authority, but they didn't exercise it. Well, he was on duty at the time that this attack occurred. And he indicated in his testimony that he was, and this is an alibi case, an alibi to the defense in this case was I didn't do it. And that is a question for the jury in terms of deciding what's going on here. And you have to look at the context. He was on duty at the time, and they called. My client did what he was supposed to do through his significant other at the time, called police. The police didn't respond to, didn't interact with him, I should say, at his residence. He was then taken by his girlfriend at the time to the hospital. And then at that point the officers responded. And when he responded, again, the important part is who do you think did this? Officer Bartholomew. His response was I didn't view him as a suspect because he couldn't visually identify him. Almost holding him to a beyond a reasonable doubt standard at the time of the investigation, which is not law enforcement's responsibility. In that context, I see that. Mr. Barnhart, let me just ask you. We've had a number of cases where we've tried to apply this color of state law issue to police officers, both on duty and off duty. What's the best authority for your side, do you think, for holding Officer Bartholomew as acting under color of state law if he, in fact, was one of the people who attacked Mr. Vander Plaats? Judge, I think the best authority that we have is the, well, in reference to the brief, but I would say Wyatt v. Cole 504, U.S. 158. I'm sorry, which one? I'm sorry? Could you say that more clearly, please? Sure. I'll slow down, Judge. Wyatt v. Cole 504, U.S. 158, the 1992 case that says the purpose is to deter from using the badge of their authority to deprive the individuals. And essentially, from a factual standpoint, you have. I guess I understand that general language. I guess I'm just looking for some cases, not necessarily from the circuit, that might have applied that on the kind of basis that you're arguing here. Ordinarily, you would have somebody putting a target of private vengeance under arrest. You flash the badge. The tools of the trade are used. And that's what the district court, I think, focused on. Right. And the problem is, the problem, Judge, is that that overlooks the fact that there are contexts in which law enforcement does things where the public doesn't know about. Right? It doesn't badge flash undercover police officers. By the district court's logic, an undercover police officer would never be using his badge of authority, even though he'd be doing work in that capacity. And the difficulty is that in that context, there are cases that don't get to that point. And so it's hard. It doesn't come to light very often, I guess, is my point in terms of they're using this code of silence. In reference to your question, I think I would say the code of silence language, that I referenced, and I can give it on rebuttal. It's in your brief. That would be in addition to Wyatt. Thanks. Thanks. Good afternoon. My name is Ken Collier-Magar, representing Bartholomew. We're here because Judge Moody, on his own motion, granted summary judgment on the color of state law, but I did not raise that issue in my initial summary judgment motion. Celotex grants the authority. You would have preferred summary judgment on a different ground, I take it. I would have preferred, actually. But Celotex, I think, is appropriate. The Green Law case and the K versus Board of Education case, which are being argued that the judge can't grant summary judgment, is just simply wrong. K dealt with a district court opting for arbitration. The Green Law case dealt with, I think, a court of appeals enhancing or increasing a criminal sentence. There's no procedural problem here. Let me ask you, Mr. Collier-Magar, as I understand this, we need to assume, for purposes of this summary judgment decision, that Officer Bartholomew was, in fact, part of the group that beat up Mr. Vander Plaats and that he was on duty at the time. I know you dispute that for future purposes and perhaps a state court trial, but do you agree that for purposes of this analysis we have to assume that much? You cannot, because Mr. Vander Plaats himself testified he had no idea who had allegedly assaulted him in the alley. Right. Okay. But Judge Moody's decision seems to assume that, for purposes of argument, Bartholomew was part of that. Yeah. He says even if these allegations are true, they cannot show a color of state law action because assaulting somebody, even if assaulting somebody on a personal level, because that's what this is, or allegedly is, is beyond the scope of the employment of the police officer. Even if my client was in his uniform and actually did attack this gentleman on the street and says to him, I'm beating you up because you were stalking and harassing my fiancee, that would be beyond the scope of his authority as a police officer. I don't know if it would be beyond color of law, though. Think about all the criminal law protections, for example, that officers in uniform have as an aggravating factor for all sorts of conduct. You know better than I do, probably, but under Indiana law, if you attack a police officer, somebody you know is a police officer, etc., that's an aggravator for criminal law, right? Yes. And that arguably would be, what do you do if you're walking down the street and a police officer in uniform starts to beat you up? That's a real problem under Indiana criminal law. And that might be under color of state law, Your Honor, but we're talking about, in this instance, given the background, and Scott started with what happened, leaves out a few essential details. Not the finest night of the LPD, right? No, especially of my other client, Mr. Williams, who made some very stupid comments to this gentleman on the phone. But that does not mean that automatically that he was the perpetrator or my client was the perpetrator of this alleged action. And, in fact, this plaintiff testified in his deposition that about a year or so before this all occurred, he had gotten in and instigated a fight in a bar with a known notorious drug dealer in Lafayette. And if anybody's going to be beating this guy up in the middle of the night, it's going to be Mr. Drug Dealer, not Officer Bartholomew, who was on duty that night with three other officers serving warrants, and they were together serving the warrants except for when they took their individual cars to go to the next place, and they were in radio contact to serve that next warrant. There was no opportunity for my gentleman to go and then wait and hide and then somehow summon him down the alleyway. I don't know if, and I don't think that you have the videotape, which was done, there was a videotape that shows Mr. Vander Plaats walking down the street and waving, and the alley is adjacent to his house, and he walks down there, and he comes back out and walks into his house about 15 minutes later. There's no way that my client could have been lying in wait when he was on duty with these other officers. That sounds like a matter for a state court trial. That's where it's headed because that's what Judge Moody did. If you take a look at this Wyatt case that was last cited to you, Your Honor, it's a Raplevin action in Mississippi where a partner got sued, a partner's attorney got sued by Raplevin. This has nothing to do, this Wyatt v. Cole case, with the law or the facts in our case. Any other questions? Thank you. Thank you, Counsel. How much time? You have one minute. Thank you, sir. Just briefly, I might want to make that a habit. I believe that the videotape is included in this, and it's important that the videotape in this context was an LPD or a Lafayette camera. And the context in which he was lured off camera I think is important and supports the inference that Officer Bartholomew was involved. This was not a random act. This was an individual that called my client by name, said, hey, Tim, come here. And the incident that the defendants are relying on happened some time ago. Really, at its core, the arguments that were raised by Officer Bartholomew  And I believe that there is particular light, if you look at before, during, and after, in the context of his authority, that demonstrates that he was using his badge of authority, using his capacity as a police officer to do harm to my client. Thank you. Thank you, John. Thanks to both counsel. The case will be taken under advisement.